UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B.G., et al., <br><br>            Plaintiffs, <br><br>   -against- <br><br> CITY OF NEW YORK, et al., <br><br>            Defendants. | 23-CV-3761 (KPF) <br><br> **OPINION & ORDER** |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Pending before the Court is a request for entry of four proposed infant compromise orders (ECF 86, ECF 88, ECF 90, ECF 92) to settle claims against Defendants City of New York, Board of Education of the City School District of the City of New York, and David C. Banks as Chancellor of the City School District of the City of New York for discrimination and deprivation of public services and public accommodations due to disability (deafness) in violation of federal, state, and local antidiscrimination laws, arising out of Defendants' failure to install a color-coded visual alarm system at Public School 347 ("PS 347"). For the reasons set forth below, the request for entry of the proposed infant compromise orders is granted without a hearing, and the proposed infant compromise orders will be separately endorsed.

## FACTUAL BACKGROUND AS TO PLAINTIFF CHILDREN

This factual background is taken from the amended complaint ("AC") brought by Plaintiffs Stacey Haynes (on behalf of her daughter B.G.), Alana Campbell (on behalf of her daughter A.R.), Flavia Franco-Karelis (on behalf of her son C.K.), Meggi Sweeney (on behalf of her daughter S.S.), United Federation of Teachers, Local 2, by its President Michael Mulgrew, Ana Viana Balzano, Zavier Sabio, Eileen Lograno, Rita Fattorusso, Roy Stelzer, Patrick Norman,

Darren Fudenske, Elise Brady, and Carey M. Ballard. (*See generally* ECF 15, AC.) Plaintiffs Haynes, Campbell, Franco-Karelis, and Sweeny ("Plaintiff Parents") are the parents of, respectively, B.G, A.R., C.K., and S.S. ("Plaintiff Children"), who are minor students at PS 347 and who are deaf. (*See* ECF 15, AC ¶ 1.) Plaintiffs Balzano, Sabio, Lograno, Fattorrusso, Stelzer, Norman, Fudenske, Brady, and Ballard are teachers and other staff at PS 347 ("Plaintiff Staff") and are deaf. (*See id.*)

PS 347 is a public school in Manhattan that serves both hearing and deaf children; deaf students are taught by deaf teachers. (*See id.* ¶ 26.) PS 347 makes use of an audio public address system to alert students and staff to events and emergencies at the school. (*See id.* ¶ 27.) Deaf students and staff at PS 347, including Plaintiff Children, are often unaware of announcements made over the audio public address system; even when deaf students and staff realize that an announcement is being made, they are unable to understand the content. (*See id.*) As a result, deaf students at PS 347 are more vulnerable to injury during emergencies than are children who can hear, because deaf students often do not know that an emergency has arisen, and even when they do, they often are unaware of the nature of the emergency or the instructions being provided. (*See id.* ¶ 29.) Deaf students at PS 347 have suffered emotional distress caused by their inability to understand emergency announcements on the audio public address system. (*See id.* ¶ 29.)

Plaintiff Parents requested installation of a visual emergency alert notification system at PS 347, but no such system had been installed at the time Plaintiffs filed the AC in June 2023. (*See* ECF 15, AC.)

2

**PROCEDURAL HISTORY**

Plaintiffs filed the Complaint on May 4, 2023. (*See* ECF 1, Compl.) Plaintiffs filed the AC on June 15, 2023. (*See* ECF 15, AC.) Defendants answered the AC on August 23, 2023. (*See* ECF 29, Ans.) On September 15, 2023, the Court entered a civil case management plan and scheduling order. (*See* ECF 32, Order.) On January 16, 2024, the parties requested an extension of time to complete discovery while they explored settlement (ECF 34), which the Court granted the next day (ECF 35). The matter was referred to a magistrate judge for settlement (ECF 36), and the reference was reassigned to me.

Over the next 18 months, I held over 20 settlement conferences, some of which involved parties and counsel, some of which involved all counsel only, and some of which were ex parte. On June 25, 2025, the parties reached an agreement in principle, which provided for agreed-upon injunctive relief, including installation of a video emergency alert system; monetary compensation for Plaintiff Children and Plaintiff Staff; and payment of reasonable attorneys' fees in an amount to be negotiated. Counsel for the parties agreed that if they did not reach agreement on the amount of reasonable attorneys' fees, Plaintiffs' lawyers would make a fee application to the Court. The Court dismissed and discontinued the case with leave to reopen within 60 days. (*See* ECF 76, Order.) The parties requested and the Court granted two extensions of time for filing a request to reopen the case. (*See* ECF 77, Letter-Mot., ECF 78, Memo Endorsement; ECF 79, Letter-Mot.; ECF 80, Order.)

On October 30, 2025, Plaintiff Parents sought guidance from the Court on seeking approval of anticipated proposed infant compromise orders. (*See* ECF 81, Letter.) I directed Plaintiff Parents to file their proposed infant compromise orders on the docket (*See* ECF 82,

Memo Endorsement), which they did on November 24, 2025. (*See* ECF 83, Proposed Infant Compromise Orders.) The next day, I issued an order explaining that infant compromise orders are considered dispositive, so that I could address and if appropriate enter the proposed infant compromise orders only if Plaintiff Parents consented to my jurisdiction for that purpose; otherwise, I would have to issue a report and recommendation to Judge Katherine Polk Failla on whether to enter the proposed infant compromise orders. (*See* ECF 84, Order.)

The Clerk of Court directed Plaintiff Parents to refile the proposed infant compromise orders and supporting affidavits as separate documents, which Plaintiff Parents did. (ECF 86, ECF 88, ECF 90, ECF 92, Proposed Infant Compromise Orders; ECF 87, ECF 89, ECF 91, ECF 93, ECF 94, Affidavits and Declaration in Support of Proposed Infant Compromise Orders.) On December 5, 2025, Plaintiff Parents filed a proposed consent to my jurisdiction for purposes of considering the proposed infant compromise orders (ECF 95), which Judge Failla approved on December 8, 2025 (ECF 97).

On December 17, 2025, I issued an order pointing out that the declaration submitted by counsel for Plaintiff Children (ECF 94) did not provide the information usually needed for a Court to assess the reasonableness of their attorneys' fees; I directed counsel for Plaintiff Children by December 23, 2025 to either (1) submit a supplemental affidavit describing their attorneys' fees in connection with the proposed settlement and attaching their retainer agreements and contemporaneous billing records, or (2) submit a letter brief explaining why such a such a filing is not required in this case. (*See* ECF 98, Order.) Counsel for Plaintiff Children duly submitted a letter explaining why a supplemental affidavit describing their retainer agreement and attorneys' fees was not necessary in this case. (*See* ECF 101, Letter.)

**LEGAL STANDARDS INVOLVING INFANT COMPROMISES**

### I.    Procedural Requirements

In this District, Local Rule 83.2(a)(1) requires that:

[a]n action by or on behalf of an infant or incompetent shall not be settled or compromised . . . without leave of the Court embodied in an order, judgment, or decree. The proceeding upon an application to settle or compromise such an action must conform, as much as possible, to the New York State statutes and rules, but the court, for cause shown, may dispense with any New York State requirement.

S.D.N.Y. Loc. R. 83.2(a)(1).[1]

New York Civil Practice Law & Rules ("CPLR") 1208 sets specific procedures for approving settlements and compromises of an infant's claim. The Court must consider an affidavit of the infant's representative that discusses (1) the representative's identity, residence, and relationship to the infant; (2) the name, age, and residence of the infant; (3) the circumstances that gave rise to the claim; (4) the nature and extent of the infant's injuries or damages; (5) the terms of the settlement; (6) the facts surrounding the settlement; (7) whether other reimbursement has been received; and (8) whether the infant's representative or family members have also made claims, and if so, more information about those claims. *See* CPLR 1208(a). The Court must also consider the affidavit of the infant's attorney, which must state: (1) the reason the attorney recommends the settlement; (2) that he is acting in the interests of the infant; and (3) what services he has rendered. *See* CPLR 1208(b).

---

[1]    Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and emphases from quoted text.

CPLR 1208(d) requires that the moving party, the infant, and his or her attorney appear "before the court unless attendance is excused for good cause." The infant's appearance is "the long-time practice of the court[s]." *Bittner v. Motor Vehicle Acc. Indemnification Corp.*, 257 N.Y.S.2d 521, 523 (N.Y. Cty. Sup. Ct. 1965). Requiring a child to appear at a hearing "permit[s] the Court to determine the extent of any injuries suffered," among other purposes. *Southerland v. City of New York*, No. 99-CV-3329 (CPS), 2006 WL 2224432, at *3 (E.D.N.Y. Aug. 2, 2006).

New York State courts have established a "good cause" standard for dispensing with an infant compromise hearing; they "consider whether the infant's appearance is necessary for a proper determination of settlement, and whether it would constitute a particular or unnecessary hardship if attendance is required." *Linda J. v. Wharton*, 594 N.Y.S.2d 971, 972 (Queens Cty. Civ. Ct. 1992). New York courts examine six factors when assessing whether there is good cause to forgo a hearing, including, as most relevant here, "[t]he nature and extent of the injuries," "[t]he age of the infant," "[t]he amount of the settlement in relation to the injuries sustained," and "[t]he nature of the hardship involved in having the infant appear in court." *Bermudez v. Spagnoletti*, 803 N.Y.S.2d 17, 17 (Kings Cty. Civ. Ct. 2005). Federal courts look to the same six factors in assessing whether to forgo an infant compromise hearing for good cause. *See Allen v. Robert's Am. Gourmet Food, Inc.*, No. 07-CV-2661 (NGG) (ETB), 2009 WL 2951980, at *9 (E.D.N.Y. Sept. 8, 2009) (citing *Wharton* and *Bermudez*); *Estate of Doe v. New York City Dep't of Soc. Servs.*, 93-CV-8385 (JFK) (MHD), 1995 WL 619864, at *2 n.2 (S.D.N.Y. Oct. 23, 1995) (stating that no formal hearing was required given the Court's familiarity with the case, among other factors, and distinguishing the conclusion in *Wharton* that a hearing was necessary so the judge could personally evaluate the infant plaintiff's facial scarring).

II.    **Substantive Requirements**

In determining whether an infant compromise should be approved, "the Court's role is to exercise the most jealous care that no injustice be done to the infant." *Southerland*, 2006 WL 2224432, at \*2. "Consistent with the applicable New York State statutes and rules, the analysis in this jurisdiction centers on whether: (1) the best interests of the infant are protected by the terms and conditions of the proposed settlement; and (2) the proposed settlement, including any legal fees and expenses to be paid, as part of the proposal, are fair and reasonable." *Orlander v. McKnight,* No. 12-CV-4745 (HBP), 2013 WL 4400537, at \*3 (S.D.N.Y. Aug. 15, 2013); N.Y. Jud. L. § 474; CPLR §§ 1205-08; *see also Edionwe v. Hussain,* 777 N.Y.S.2d 520, 522 (2d Dep't 2004) (holding that the required analysis is whether settlement is "fair and reasonable and in the infant plaintiff's best interests"). "There is no bright-line test for concluding that a particular settlement is fair." *Sch. for Language & Commc'n Dev. v. New York State Dep't of Educ.,* No. 02-CV-0269 (JS) (JO), 2010 WL 1740416, at \*2 (E.D.N.Y. Apr. 7, 2010), *adopted by* 2010 WL 1752183 (E.D.N.Y. Apr. 28, 2010). In reviewing a proposed infant compromise order, a district court has broad discretion in determining the fairness of the settlement. See *Neilson v. Colgate-Palmolive Co.,* 199 F.3d 642, 655 (2d Cir. 1999) ("Rule 83.2 is hardly a rigid obligation imposed on district courts.").

Courts in this District approve proposed infant compromises only when those agreements are "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." *Id.* at 654. In making this determination, a court should "form an educated estimate of the complexity, expense, and likely duration of such litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of

7

the proposed compromise." *Martegani v. Cirrus Design Corp.,* 687 F. Supp. 2d 373, 377 (S.D.N.Y. 2010) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). These other factors include: the stage of the proceedings; the risks of establishing liability; the risks of establishing damages; the ability of the defendants to withstand a greater judgment; and the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. *See Allstate Ins. Co. v. Williams,* No. 04-CV-4575 (CLP), 2006 WL 2711538, at *2 (E.D.N.Y. Sept. 21, 2006).

A settlement is presumptively fair and reasonable if "(i) the settlement is not collusive but was reached after arm's length negotiation; (ii) the proponents have counsel experienced in similar cases; [and] (iii) there has been sufficient discovery to enable counsel to act intelligently." *T.H. v. New York City Dep't of Educ.,* 99 F. Supp. 3d 394, 395-97 (S.D.N.Y. 2015). Also, it is well-settled that a compromise negotiated by an infant's natural guardian is presumptively fair and in the best interests of the child. *See, e.g., Sch. for Language & Commc'n Dev.,* 2010 WL 1740416, at *3.

### III.    Attorneys' Fees

"When approving an infant's compromise, the court [also] has an obligation to approve the reasonableness of attorney's fees." *Sanchez v. MTV Networks,* 10-CV-7854 (TPG), 2012 WL 2094047, at *2 (S.D.N.Y. June 11, 2012); *see also Orlander*, 2013 WL 4400537, at *6. The inquiry should focus on whether there was "suitable compensation for the attorney for his service . . . on behalf of the . . . infant." *Baez v. City of New York,* No. 09-CV-2635 (RRM) (JO), 2010 WL 1992537, at *3 (E.D.N.Y. Apr. 21, 2010). The agreement to a proposed attorney fee by the guardian of an infant plaintiff is not sufficient to approve the fee; "any agreement of the

guardian is advisory only." *Werner v. Levine,* 276 N.Y.S.2d 269, 271 (Nassau Cty. Sup. Ct. 1967); *see also Baez,* 2010 WL 1992537, at *3 (agreements on fees "serve only to guide the court in making a determination committed to its sound discretion"). District courts have "broad authority to determine the reasonableness of attorney's fees." *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 89 (2d Cir. 2010).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany,* 522 F.3d 182, 186 (2d Cir. 2008) (*quoting Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). The hourly rates should be "what a reasonable, paying client would be willing to pay," *Arbor Hill Concerned Citizens,* 522 F.3d at 184, and should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984).

"[T]he fee applicant has the burden of showing by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Cnty. of New York,* 433 F.3d 204, 209 (2005) (*quoting Blum,* 465 U.S. at 896 n.11). That evidence must include billing records "from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept the court should not award the full amount requested." *Martegani,* 687 F. Supp. 2d at 378.

**DISCUSSION**

**I.      The Required Filings Have Been Made**

Plaintiff Campbell is the representative of her minor daughter A.R.; Campbell submitted

an affidavit that discuss the eight factors set out in CPLR 1208(a). (*See generally* ECF 87,

Affidavit of Alana Campbell.) Campbell states her identity and her relationship to A.R., and she

indicates A.R.'s age and residence. (*See id.* ¶¶ A-B.) Campbell sets out the terms of the

settlement: specifically, in addition to the agreed-upon injunctive relief, Defendants have

agreed to pay $34,250.00 to A.R. (*See id.* ¶ D.) Campbell describes the circumstances that gave

rise to the claim and the nature of A.R.'s injuries (*see id.* ¶ C); the facts surrounding the

settlement (*see id.* ¶ D); and that no other claims have been made in connection with the

circumstances underlying A.R.'s claims in this case (*see id.* ¶ G).

Plaintiff Haynes is the representative of her minor daughter B.G.; Haynes submitted an

affidavit that discuss the eight factors set out in CPLR 1208(a). (*See generally* ECF 89, Affidavit of

Stacey Haynes.) Haynes states her identity and her relationship to B.G., and she indicates B.G.'s

age and residence. (*See id.* ¶¶ A-B.) Haynes sets out the terms of the settlement: specifically, in

addition to the agreed-upon injunctive relief, Defendants have agreed to pay $34,250.00 to B.G.

(*See id.* ¶ D.) Haynes describes the circumstances that gave rise to the claim and the nature of

B.G.'s injuries (*see id.* ¶ C); the facts surrounding the settlement (*see id.* ¶ D); and that no other

claims have been made in connection with the circumstances underlying B.G.'s claims in this

case (*see id.* ¶ G).

Plaintiff Franco-Karelis is the representative of her minor son C.F., who is incorrectly

named in the AC as C.K.; Franco-Karelis submitted an affidavit that discuss the eight factors set

out in CPLR 1208(a). (*See generally* ECF 91, Affidavit of Flavia Franco-Karelis.) Franco-Karelis states her identity and her relationship to C.F., and she indicates C.F.'s age and residence. (*See id.* ¶¶ A-B.) Franco-Karelis sets out the terms of the settlement: specifically, in addition to the agreed-upon injunctive relief, Defendants have agreed to pay $34,250.00 to C.F. (*See id.* ¶ D.) Franco-Karelis describes the circumstances that gave rise to the claim and the nature of C.F.'s injuries (*see id.* ¶ C); the facts surrounding the settlement (*see id.* ¶ D); and that no other claims have been made in connection with the circumstances underlying C.K.'s claims in this case (*see id.* ¶ G).

Plaintiff Meggi Sweeney Smith (named in the AC as Meggi Sweeney) is the representative of her minor daughter S.S.; Sweeney Smith submitted an affidavit that discuss the eight factors set out in CPLR 1208(a). (*See generally* ECF 93, Affidavit of Meggi Sweeney Smith.) Sweeney Smith states her identity and her relationship to S.S., and she indicates S.S.'s age and residence. (*See id.* ¶¶ A-B.) Sweeney Smith sets out the terms of the settlement: specifically, in addition to the agreed-upon injunctive relief, Defendants have agreed to pay $34,250.00 to S.S. (*See id.* ¶ D.) Sweeney Smith describes the circumstances that gave rise to the claim and the nature of S.S.'s injuries (*see id.* ¶ C); the facts surrounding the settlement (*see id.* ¶ D); and that no other claims have been made in connection with the circumstances underlying S.S.'s claims in this case (*see id.* ¶ G).

Jonathan Berger, one of the lawyers of Plaintiff Parents and Plaintiff Children, has submitted a declaration describing the terms of the settlement, opining that the settlement is "fair and reasonable under all the attendant circumstances," and stating that he acted in the interests of Plaintiff Children. (ECF 94, Declaration of Jonathan Berger ¶¶ E-G, I.) His declaration

11

does not explain his reasons for recommending the settlement, which is typically required under CPLR 1208(b), but that information is unnecessary in light of my close familiarity with the settlement negotiations in this case. *See* CPLR 1208(b). And counsel for Plaintiff Children submitted a letter explaining why a supplemental affidavit describing their retainer agreement and attorneys' fees was not necessary in connection with this case. (*See* ECF 101, Letter.)

**II.    There Is Good Cause To Forgo a Hearing at Which Plaintiff Children Must Appear**

The appearance of Plaintiff Children is not required for me to assess the reasonableness of the proposed settlement; and requiring the Plaintiff Children to attend a live hearing would cause unwarranted hardship.

Bringing Plaintiff Children in for a live hearing would not assist me in assessing the severity of their injuries: the harm they suffered was emotional distress, and seeing them in person would not provide me with significantly more information than I have gleaned based on my oversight of the settlement discussions. *See Estate of Doe*, 1995 WL 619864, at *2 n.2 (declining to hold a hearing in part based on the Court's prior familiarity with the case). Additionally, Plaintiff Children are not yet of high school age, and such young children are unlikely to have independent views about the settlement terms.

Requiring Plaintiff Children to attend a hearing would also constitute a hardship. Attending a court hearing would likely be overwhelming for them, since it would require them to recount their emotional distress and would also require them to miss school unless the hearing were deferred until a school holiday. *See id.* (declining to hold a hearing in part based on "the desirability of not exposing the individual plaintiffs to further probing in this matter").

Accordingly, I conclude that there is good cause to forgo a live hearing.

**III.     The Proposed Infant Compromise Is Fair, Reasonable, and Adequate**

A.      <u>The Terms of the Agreement</u>

Plaintiff Parents are proponents of the settlement, and I have not seen any indication to rebut the presumption that a settlement negotiated by an infant's natural guardian is fair and in the best interests of the child. *See, e.g., Sch. for Language & Commc'n Dev.,* 2010 WL 1740416, at *3. To the contrary, the settlement bears indicia of being fair and reasonable, since it is the product of months of arms'-length negotiation under my supervision and led to a substantial payment to each Plaintiff Child. The settlement also indirectly benefits those Plaintiff Children who continue to attend the school, because the parties' agreement encompasses significant and timely agreed-to injunctive relief, including installation of a video notification system at PS 347, into which Plaintiffs had input.

The alternative to a settlement would be a very expensive and protracted litigation. Defendants would have colorable defenses, and so Plaintiff Children would face a real risk that they would not prevail on liability. Even if they established liability, emotional distress damages are inherently personal, and so they would face a real risk of recovering less than the amount they will receive under the parties' settlement agreement. While the parties did not engage in formal discovery, they exchanged information in connection with the settlement process that provided the necessary basis for counsel for Plaintiff Children to evaluate the settlement. Based on the foregoing factors, I conclude that the terms of the settlement are "fair, reasonable, and adequate," based on a comparison of "the terms of the compromise with the likely rewards of litigation." *Neilson,* 199 F.3d at 654.

B.      Attorneys' Fees

Counsel for Plaintiff Children submitted a letter (ECF 101) that persuaded me that a supplemental affidavit describing their retainer agreement and attorneys' fees was not necessary in connection with this case. As counsel for Plaintiff Children explained:

- Settlement negotiations took place in stages. Following negotiations over injunctive relief, the parties negotiated compensatory damages. Only after injunctive relief and compensatory damages had been agreed upon did the parties turn to negotiating attorneys' fees, so that the settlement of Plaintiff Children's claims was independent of negotiations over attorneys' fees. (*See id.* at 2.)

- The attorneys' fees, costs, and disbursements will not be taken out of the payments to Plaintiff Children. (*See id.*)

## CONCLUSION

For the reasons set forth above, the application to approve the proposed infant compromise orders is granted without a hearing. I will separately endorse each of the four proposed infant compromise orders.

DATED:  January 2, 2026
        New York, New York

SO ORDERED.

**ROBYN F. TARNOFSKY**
United States Magistrate Judge

14